***********
The Full Commission reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order, except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn, with modifications.
 ***********
In defendants' brief to the Full Commission, defendants made motion to include additional evidence in the record, specifically a sworn Affidavit from Frank A.O. Buckless, N.C. State University College of Management. Upon review of defendants' motion and the record in this matter, the Full Commission, in its discretion, finds there to be insufficient cause to reopen the record in this matter. Thus, defendants' motion to include additional evidence is hereby DENIED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
FINDINGS OF FACT
1. This matter came before the Industrial Commission pursuant to Plaintiff's Petition, filed with the Commission on July 2, 2003.
2. Plaintiff and defendants, the North Carolina Department of Environmental and Natural Resources and Montgomery County Health Department, are subject to and bound by the provisions of the North Carolina Torts Claims Act. David Ezzell is not a party to this action, but is one of the named employees and or agents of the defendants.
3. On July 27, 1999, plaintiff entered into an Offer to Purchase and Contract for Lot No. 871, Hattaway Circle, located in Montgomery County, North Carolina. One of the conditions precedent to plaintiff purchasing Lot 871 was that the lot perk for a three-bedroom residence.
4. On July 30, 1999, after confirming that the soils then present on Lot 871 were suitable for a septic sytem, The Mongomery County Health Department, Environmental Health Section, issued Improvement Permit No. 99291, authorizing the construction of a three-bedroom residence on Lot 871.
5. In reliance upon the permit, plaintiff purchased Lot 871 for a purchase price of $118,000.00.
6. Thereafter, plaintiff caused a boat dock and related amenities to be built at the waterfront of Lot 871, for a total cost of $29,023.94.
7. Approximately two years later, plaintiff determined that he could make better use of Lot 871 by moving the driveway from the left-hand portion of the lot to the right-hand portion of the lot, and he approached The Montgomery County Health Department with those proposed changes. The Montgomery County Health Department informed Plaintiff that he needed to resubmit an application for a permit identifying the new proposed location of the driveway. Plaintiff complied with that request and resubmitted an application for a new permit.
8. On September 5, 2002, John K. Fowlkes, then acting Environmental Health Coordinator for The Montogmery County Health Department, notified Plaintiff that Lot 871 did not pass the perk test. Mr. Fowlkes delivered in written form a Notice of Revocation bearing the date of September 5, 2002, notifying plaintiff of his findings and conclusions that the property was unsuitable for a ground absorption sewage system, and further informing plaintiff that Permit No. 99291, issued on July 30, 1999, was being revoked.
9. Prior to the trial of this matter, defendants admitted that they were negligent in issuing Permit No. 99291.
10. Defendants informed plaintiff that he had the right to request a re-test of the property. Pursuant to that notification, plaintiff requested that the property be retested to determine its suitability for a ground absorption sewage system.
11. As part of the retest, the North Carolina Department of Environmental and Natural Resources sent David B. McCloy, PhD., R.S., to inspect and test Lot 871 to determine whether the soils on Lot 871 were suitable for a ground absorption sewage system.
12. On July 31, 2002, Mr. McCloy delivered a letter to Jon Fowlkes, informing Mr. Fowlkes that he agreed with his conclusion that Permit No. 99291 issued for Lot No. 871 should be revoked. In his July 31, 2002, letter to Mr. Fowlkes, Mr. McCloy set out three alternatives that would allow plaintiff to utilize his property for its intended purpose of constructing a three-bedroom residence, which were:
a. Plaintiff could purchase another adjoining parcel of real property with suitable or provisionally suitable soil on which to place the ground absorption sewage treatment and disposal system. Plaintiff could install a sufficient system which would allow him to pump the effluent offsite from Lot 871 to the newly acquired property.
b. Plaintiff could obtain an easement to another parcel of property with suitable or provisionally suitable soils on which to place the ground absorption sewage treatment and disposal system. Plaintiff could install a sufficient system which would allow him to pump the effluent offsite from Lot 871 to the property.
c. Plaintiff could install a septic system incorporating both pre-treatment (sand or peat filter) and a subservice drip irrigation (hereinafter "drip irrigation system") under the extremely limited soils/site conditions described in Mr. McCloy's July 31, 2002 letter. The location of the septic system on Lot 871 would have to be determined first. The pre-treatment component would allow for a siting requirement of only 12 inches of provisionally suitable soil. The verticle separation between the drip lines and the saprolite and rocky layer would be a minimum of 6 inches. The Long Term Acceptance Rate for the subsurface drip irrigation would be 0.2. THE SEPTIC SYSTEM NEEDS TO BE DESIGNED (AND INSTALLED) BY A PROFESSIONAL ENGINEER OR INDIVIDUALS AUTHORIZED IN WRITING BY THE PRETREATMENT AND DRIP IRRIGATION MANUFACTURERS. THE SERVICES OF A LICENSED SOIL SCIENTIST IS REQUIRED FOR THE PRETREATMENT COMPONENT.
13. When Plaintiff investigated his alternatives, he elected to buy an adjoining parcel of property on which to install a ground absorption sewage system. Plaintiff entered into an option to purchase Lot 861, the adjoining parcel of property, for the purchase price of $70,000.00. The option to purchase Lot 861 expired on November 30, 2004.
14. With respect to a drip irrigation system, as proposed by Mr. McCloy in his July 31, 2002, letter, the Full Commission makes the following specific findings of fact:
a. At best, there may be 100 drip irrigation systems in the entire state of North Carolina;
b. There are no such drip irrigation systems in Montgomery County;
c. The State's witnesses with experience and knowledge about the drip irrigation systems, at best, have installed only twelve of these type systems;
d. Of the approximate twelve systems the State's witnesses have installed, only six of the drip irrigation systems have been monitored;
e. Even though these drip irrigation systems have been in existence for approximately ten years, the State's witnesses have only two years of experience with respect to the drip irrigation systems;
f. The standard septic system costs one-tenth of the price of a drip irrigation system;
g. The initial estimated cost for a drip irrigation system on Lot 871 would be approximately $35,200.00;
h. A new drip irrigation system requires annual monitoring;
i. The first year's monitoring costs $1,200.00, each subsequent year costs $600.00 to monitor;
j. A new drip irrigation system requires annual lab tests which cost $200.00 per year;
k. The drip irrigation system must be monitored and lab tests must be performed every year it is in place;
l. The cost of monitoring and performing lab tests over the life expectancy of the drip irrigation system exceeds $24,000.00;
m. The cost of a drip irrigation system is substantially more than other systems typically issued and installed in the State of North Carolina; and,
n. In the instant case, neither the State, the State's witnesses, nor any person or entity that bid to install the proposed drip system would warrant the work or guarantee that the system would work for any period of time, or at all.
15. This matter initially came on for hearing before the Deputy Commissioner on September 15, 2004, at which time it was postponed at defendants' request. The Deputy Commissioner directed defendants to ascertain whether a drip irrigation system would work on Lot 871, and if it would, that a permit be issued and obtained to install a properly designed drip irrigation system.
16. This matter came back on for hearing before the Deputy Commissioner on November 2, 2004. At the commencement of the November 2, 2004 hearing, the Deputy Commissioner requested that the State present a permit issued by The Montgomery County Health Department authorizing and permitting the installation of a drip irrigation system. The Montgomery County Health Department had not issued any permit for the installation of a drip irrigation system, and when asked by the Deputy Commissioner, did not know whether it would issue such a permit.
17. On October 15, 2004, defendants submitted a preliminary bid and specification plan for the design and construction of a drip irrigation system for Lot 871. The preliminary bid and specification plan states on its face that it is not for construction purposes. The preliminary plans and specifications were given without the requirements as codified in 15A NCAC 18A. 1900, et. seq., being met.
18. Defendants have failed to provide any evidence to show the Commission that the drip irrigation system as designed on the preliminary bid and specifications, not for construction purposes, can be permitted, in large part, because defendants preliminary bid and specification plan fails to include the provide the information required in 15A NCAC 18A. 1900, et. seq.
19. The Full Commission finds that it is unreasonable to require plaintiff to install a drip irrigation system on Lot 871 given that defendants failed to issue a permit, the preliminary plans and specifications for the proposed drip irrigation system for Lot 871 do not meet the requirements of 15A NCAC 18A. 1900, et. seq., the proposed drip irrigation system for Lot 871 requires subsequent and substantial additional costs to install and maintain, and because neither the State, the State's witnesses, nor any person or entity that bid to install the proposed drip system would warrant the work or guarantee that the system would work for any period of time, or at all.
20. The Full Commission finds that it is reasonable for plaintiff to mitigate his damages by purchasing Lot 861, and installing a septic sytem on Lot 861 to pump the effluent from Lot 871.
21. Plaintiff has presented evidence, and the Full Commission so finds, that it has and will cost plaintiff the sum of approximately $96,024.30 to purchase Lot 861, and construct a suitable septic system on Lot 861, which is broken down as follows:
• $70,000.00 — purchase additional lot
• $5,000.00 — closing costs
• $5,100.00 — installation of upgraded septic system on Lot 871
• $150.00 — perk test on Lot 861
• $5,380.49 — taxes on Lot 861 prorated over 30 years
• $513.81 — Lake Tillery taxes on Lot 861
• $250.00 — April 6, 2004, appraisal
• $500.00 — August 9, 2004, appraisal
• $9,150.00 — homeowner's dues over 30 years on Lot 861
22. The Full Commission finds that since the time in which plaintiff intended to construct his residence in 2002 and 2003, the cost for construction has increased by at least 5.8%. As a result, Plaintiff will spend at least $21,200.00 more dollars to construct his residence, if he is able to complete construction by mid-2005.
23. During the hearing of this matter before the Deputy Commissioner, plaintiff offered evidence, and the Full Commission finds as fact, that as a result of not being able to start construction as intended, plaintiff will incur higher interest costs to perform construction. The undersigned finds that had plaintiff been permitted and allowed to begin construction as anticipated, he would have locked in an interest rate of 5%. Since that time, interest rates have increased. The Full Commission finds that as a result of defendants' negligence and the resulting delay in construction, plaintiff will incur an increased interest rate of at least 1.5% over the term of its loan. The cost of this 1.5% increase in interest is $174,745.54.
24. Plaintiff is not able to obtain a building permit due to defendants' negligence. The damages plaintiff has incurred are not attributable to plaintiff's actions.
25. Defendants have not presented any evidence to show that plaintiff has been able to prevent or preclude any of the damages he seeks to recover.
26. Defendants' position on damages cannot be supported by the evidence of record. Defendants have raised defenses that cannot be supported in law, contending that plaintiff would have been obligated to purchase a second lot even if defendants had not been negligent, or that plaintiff should be compelled to accept the untested system outlined herein. Defendants' contention that either fact lowered plaintiff's damage claim to approximately $8,000.00 was belied by their own evidence.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff and Defendants The North Carolina Department of Natural Resources and The Montgomery County Health Department are properly before the North Carolina Industrial Commission N.C. Gen. Stat. § 143-291. Defendant David Ezzel is not a proper party before the Industrial Commission. As a result, this Judgment is not binding on him, and has no effect against him. Id.
2. The North Carolina Industrial Commission has jurisdiction over Plaintiff and Defendants The North Carolina Department of Environmental and Natural Resources and The Montgomery County Health Department. Id.
3. Under the Tort Claims Acts, negligence is determined by the same rules applicable to private parties. Bolkir v. N.C. State Univ.,321 N.C. 706, 709 (1998). Plaintiff must show: (1) that defendant owed plaintiff a duty of care under the circumstances; (2) that the actions or omissions by at least one of the named employees of defendant constituted a breach of that duty; (3) that the breach was the actual and proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages.Davidson v. University of North Carolina at Chapel Hill, 142 N.C. 544,543 S.E.2d 920 (2001).
4. The North Carolina Department of Environmental and Natural Resources and The Montgomery County Health Department owed plaintiff a duty of care in making a proper assessment of Lot 871 before issuing Improvement Permit No. 99291, authorizing the construction of a three-bedroom residence on the lot. The defendants failed in this duty of care when they admittedly negligently issued Permit No. 99291 upon discovering that the property was unsuitable for a ground absorption sewage system. Defendants' breach directly and proximately caused plaintiff to incur damages in the amount of $267,733.00.
5. As a result of defendants' conduct, plaintiff was required to incur additional expenses associated with retaining experts to defend against defendants' non-justiciable issues of law or fact. Accordingly, plaintiff is entitled to recover the costs and attorneys' fees he incurred in prosecuting his claims and defending against defendants' frivilous defenses, pursuant to N.C. Gen. Stat. §§ 1A-1, Rule 11, 6-13, 6-14, 6-20, 6-21.5, 7A-305(d)(3), 143-291, 143.291.1, and 143.291.2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendants, The North Carolina Department of Environmental and Natural Resources and The Montgomery County Health Department, jointly and severally, shall pay to plaintiff the sum of $267,733.00.
2. Defendants, The North Carolina Department of Environmental and Natural Resources and The Montgomery County Health Department, jointly and severally, shall pay to plaintiff reasonable attorney's fees in the amount of $18,611.07.
3. Defendants, The North Carolina Department of Environmental and Natural Resources and The Montgomery County Health Department, jointly and severally, shall pay to plaintiff the sum of $13,034.00, representing plaintiff's costs and expenses incurred in prosecuting and defending its petition.
This 8th day of August 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 CONCURRING: S/______________________ LAURA KRANIFELD MAVRETIC
COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER